038993/01245/MHW/JFM

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WESAM ZUMUT, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL LEMKE, et al, <br><br> Defendants. | Case Number 14-cv-6479 <br><br> Judge Rebecca R. Pallmeyer |

### SALEH OBAISI, M.D.'S MEMORANDUM OF LAW IN SUPPORT OF HIS FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT

NOW COMES the Defendant, SALEH OBAISI, M.D., by and through his attorneys, Matthew H. Weller and James F. Maruna, of CASSIDAY SCHADE LLP, and for his Memorandum of Law in support of his Fed. R. Civ. P. 56 Motion for Summary Judgment, states as follows:

### INTRODUCTION

Plaintiff, WESAM ZUMUT, filed a complaint against Illinois Department of Corrections ("IDOC") prison officials and some of his medical providers at Stateville Correctional Center ("Stateville"), where he is currently incarcerated on a murder charge, claiming civil rights violations related to, *inter alia*, a failure to properly treat a non-displaced fracture of his pinky toe following an injury that he sustained while playing basketball at the prison in 2013. *See* Defendant, Saleh Obaisi, M.D.,'s Statement of Undisputed Facts ("SOF"), ¶¶ 2-4.

Initially, the Plaintiff sues Dr. Obaisi, but the undisputed facts show that most of the Plaintiff's treatment related to his pinky toe fracture was undertaken by other physicians and medical providers practicing at Stateville. (SOF at ¶ 3). Nevertheless, it is clear that during the four (4) times that the Plaintiff presented to Dr. Obaisi for treatment of his pinky toe fracture, Dr.

Obaisi provided adequate treatment, including, providing multiple types of pain medication, ordering a cast to immobilize the Plaintiff's injury, granting the Plaintiff special medical permits allowing him to have crutches to ambulate around the prison while the fracture healed, ordering multiple x-rays of the Plaintiff's pinky toe which confirmed that the fracture healed well and in good alignment, and finally, ordering physical therapy to help the Plaintiff rebuild muscle strength in his leg after his cast was removed. (SOF at ¶ 39, 53, 59, 60, 62).

Based on the foregoing facts, the evidentiary record establishes that Dr. Obaisi's conduct did not rise to the level of deliberate indifference. Construing all uncontroverted facts in the light most favorable to the Plaintiff, his claim for deliberate indifference fails as a matter of law. Accordingly, this Honorable Court should enter an Order granting summary judgment in favor of Dr. Obaisi and against the Plaintiff.

## II. MATERIAL FACTS

Dr. Obaisi incorporates his Statement of Undisputed Facts Pursuant to Local Rule 56.1 and accompanying exhibits, filed concurrently with his Motion for Summary Judgment and supporting Memorandum of Law.

## III. ARGUMENT

**A.     Venue and Jurisdiction are Proper**

Dr. Obaisi has consented to this Court's jurisdiction and venue by admission in his Answer to the Plaintiff's Third Amended Complaint. (SOF at ¶ 1).

**B.     Summary Judgment is Proper in this Matter**

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts

showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Though facts must be viewed in the light most favorable to the non-moving party at the summary judgment stage, this rule only applies if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). "A mere scintilla of evidence" in support of the non-movant's position is insufficient; a party will only be successful in opposing summary judgment "when it presents definite, competent evidence to rebut the motion." *Essex v. United Parcel Serv. Inc.,* 111 F.3d 1304, 1308 (7th Cir. 1997).

C.  **Plaintiff, improperly, seeks to hold Dr. Obaisi liable for treatment decisions made by other, independent, medical providers**

Initially, Plaintiff, improperly, seeks to hold Dr. Obaisi liable for the treatment decisions of other medical providers, solely based on his position as Medical Director at Stateville. (SOF at ¶ 3). The Plaintiff's Third Amended Complaint makes several allegations of deliberate indifference based on the actions of medical providers besides Dr. Obaisi. Liability under 42 U.S.C § 1983 requires direct and personal involvement in the situation that causes injury to an inmate. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). To be liable under Section 1983, the individual defendant must have caused or participated in a constitutional deprivation. *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005). Despite Plaintiff's medical records clearly showing that other providers treated the Plaintiff's pinky toe fracture, the Plaintiff testified that he is holding Dr. Obaisi liable for the medical care and treatment rendered by any provider at Stateville simply because Dr. Obaisi was the Medical Director of the prison. (SOF at ¶ 3).

Here, the Plaintiff's Complaint, generally, encompasses the time period from July 2013 when he sustained his fracture until November 2013 when x-rays showed his bone re-growing, his cast was removed, and Plaintiff admitted that his pain subsided. (SOF at ¶ 31, 61). The Plaintiff's injury occurred on July 13th but Plaintiff admitted under oath that he did not treat with Dr. Obaisi

until July 17th because he was treating with other medical providers. (SOF at ¶¶ 31- 39). Nevertheless, the Plaintiff improperly raises nine (9) specific complaints against Dr. Obaisi for alleged acts and omissions occurring on July 13th and July 15th. (Dkt. # 42, ¶ 25(a)-(i)). He also expressly complains that Dr. Obaisi failed to send him outside of Stateville for treatment based on complaints that he made on July 20th and July 24th, but the undisputed record shows that the Plaintiff made those complaints to other medical providers and did not even see Dr. Obaisi again until September 9th. (Dkt. # 42, ¶ 25(m)); *see also* (SOF at ¶ 42) (July 20, 2013 medical appointment with Dr. Ann Davis); (SOF at ¶ 44) (July 24, 2013 medical appointments with two nurses); (SOF at ¶ 53) (September 9, 2013 examination with Dr. Obaisi).

Moreover, from the date of his fracture in July 2013 until his cast was removed in November 2013, the Plaintiff personally treated with Dr. Obaisi only four (4) times and during one of those visits the Plaintiff only complained of ear-pain rather than any concerns with his fracture. (SOF at ¶ 39, 53, 60-61). To the degree that the Plaintiff claims the wrong treatment was undertaken or a recommendation was ignored, he should have brought a claim against that specific provider rather than Dr. Obaisi.

In 2013, Stateville had 1,600 inmates meaning that no single medical provider could attend to each and every inmate's medical needs. (SOF at ¶ 13). Dr. Obaisi, as Medical Director, relied on his staff of thirty to forty nurses, licensed practical nurses ("LPN"), his physician's assistant, and the other staff physician to attend to the inmates' medical needs to exercise their independent medical judgment in how to treat a patient or when to refer him to a higher level medical provider, such as the Medical Director. (SOF at ¶ 11). Moreover, Stateville practices "continuity of care" meaning that if one medical provider begins treating a patient for a specific problem, that provider continues treating that inmate for the same issue. (SOF at ¶ 17). If a provider refers a patient outside of the

4

prison, that provider will generally handle all follow-up treatment inside the prison for that condition. (SOF at ¶ 17).

It is neither uncommon nor improper for the Medical Director at a medical facility as large as Stateville to rely on other individuals to perform medical tasks. As noted by the Seventh Circuit, "[b]ureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

The Plaintiff's Complaint ignores the fact that almost all of the treatment for his pinky toe fracture was provided by medical providers other than Dr. Obaisi. When Dr. Obaisi first saw the Plaintiff on July 17th, he reviewed the x-ray, noted a fracture, ordered a cast, prescribed pain medication, low bunk and gallery permits, and gave the Plaintiff two crutches for six weeks. (SOF at ¶ 39). This is a far cry from deliberate indifference. Three days later, Plaintiff started treating with the staff physician, Dr. Ann Davis, who gave the Plaintiff new permits. (SOF at ¶ 42). On July 26th, Dr. Davis, not Dr. Obaisi, examined the Plaintiff and sent him out to St. Joseph Hospital for emergency medical treatment out of a precautionary concern that he was having vascular compromise at his injury site – which the ER did not find. (SOF at ¶¶ 45-48). The Plaintiff agreed that he only saw Dr. Obaisi one time before his emergency referral on the 26th. (SOF at ¶ 49).

From July 26th through September 9th, the Plaintiff treated with Dr. Davis and other providers; rather than Dr. Obaisi. (SOF at ¶¶ 50 – 52). The Plaintiff saw Dr. Obaisi on September 9th for ear-related medical complaints and did not voice any foot or pinky toe complaints. (SOF at ¶ 53). From September 9th through October 31st, the Plaintiff, again, treated with Dr. Davis and other providers. (SOF at ¶¶ 54-58). On October 31st, Dr. Obaisi examined the Plaintiff for his fracture, ordered a repeat x-ray, and on November 4th, determined that a callus (a sign of bone

5

growth) was visible in the x-ray, which meant that the Plaintiff's cast could be removed. (SOF at ¶¶ 60-61).

Section 1983 requires personal liability rather than *respondeat superior* liability. To the degree that the Plaintiff, as he testified, is seeking to hold Dr. Obaisi liable for the treatment decisions made by other providers, his claims fail as a matter of law. *See Gentry*, 65 F.3d at 561; (SOF at ¶ 3).

**D.      Plaintiff Has Not Established the Elements of Deliberate Indifference**

*1.      Plaintiff must establish all three elements of deliberate indifference to prevail*

The uncontroverted factual record establishes that Plaintiff has unequivocally failed to create any issue of material fact to defeat Dr. Obaisi's Motion for Summary Judgment. In order to prevail on a claim under § 1983, the Plaintiff must show that Dr. Obaisi acted with deliberate indifference to his serious medical need or condition. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). The burden of proving deliberate indifference rests on the Plaintiff. *Id.*

The United States Supreme Court has articulated a three-part test for proving deliberate indifference. The Plaintiff must prove: (1) the existence of an objective, serious medical need; (2) that the defendant was subjectively aware of a specific, serious medical need or risk; and (3) that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

In other words, the Plaintiff must establish that Dr. Obaisi actually knew (independently and subjectively) that the Plaintiff needed treatment for a serious medical need or risk but nevertheless <u>purposely and deliberately withheld such treatment</u>. *See Sellers*, 41 F.3d at 1102 (emphasis added). Deliberate indifference "is merely a synonym for intentional or criminally

6

reckless conduct." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even tortious recklessness is not enough. *Id*. Unsuccessful medical treatment, neglect, nor medical malpractice is sufficient to support a claim for deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

    2.    *The Plaintiff has not shown that he suffered from an objectively serious medical condition*

In order to defeat this Motion, Plaintiff must first prove the existence of an objective, serious medical need. *Estelle,* 429 U.S. at 107; *Sellers,* 41 F.3d at 1102; *Vance,* 97 F.3d at 991. A serious medical need is an objective, life-threatening situation, or a risk of needless pain or lingering disability that went untreated, which would have been so obvious that even a lay person would perceive the need for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005); *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991). Furthermore, in order to establish that he has a serious medical condition, a plaintiff must present evidence that indicates said condition has risen to a level that posed a threat of serious harm to his present health or to his future health. *Stevenson v. Scholz*, 07-3108, 2009 WL 790961, 2009 U.S. Dist. LEXIS 22945, *23 (C.D. Ill. Mar. 23, 2009).

Here, the Plaintiff's serious condition is a non-displaced fracture of his pinky toe, a very common injury. (SOF at ¶ 2). Initially, on the day that the Plaintiff sustained his injury, he had no bruising in his toe, no signs of deformity in the foot, and no neurogenic impairment in the foot. (SOF at ¶ 32, 34). The undisputed medical testimony in this case is that it takes a certain amount of force to break a bone. (SOF at ¶ 35). That same force would be applied to all of the muscles, tendons, and ligaments, surrounding the bones. (SOF at ¶ 35). Therefore, if the fracture is significant, you would expect to see bruising due to the muscles, tendons, and ligaments surrounding the bone rupturing from the trauma. (SOF at ¶ 35). Here, the Plaintiff

7

had no signs of bruising, whatsoever, after his injury. (SOF at ¶ 35). Thus, this was an extremely low-force, minor fracture that did even require any medical intervention to re-align the bone. (SOF at ¶ 72).

To the degree the Plaintiff claims his serious injury is pain, Seventh Circuit case law analyzing whether pain is an objectively serious medical condition, generally requires that the pain be accompanied by some other objective indicia beyond the Plaintiff's subjective complaints. *See Reed v. McBride,* 178 F.3d 849, 853 (7th Cir. 1999) (complaints of pain accompanied by internal bleeding, violent cramps, and periods of unconsciousness); *see also Gutierrez v. Peters*, 111 F.3d 1364, 1370 (7th Cir. 1997) (pain complaints were objectively serious when it was manifestly clear that an untreated infected cyst caused "excruciating pain" sometimes accompanied by fever) (emphasis added). Here, even immediately after the injury, the Plaintiff only reported his pain as "6 out of 10". (SOF at ¶ 32). Two days later, the Plaintiff subjectively reported that he was in pain, but chose to attend a personal visit rather than seek treatment at Stateville's Health Care Unit ("HCU") - which he would have passed twice on his way to and from the prison's visitation area. (SOF at ¶ 38). On July 24th, he told a provider that he had no distress. (SOF at ¶ 44). When he went to St. Joseph's Hospital ER because Dr. Davis was concerned about a possible vascular event, the independent, ER doctors assessed that the Plaintiff was not in "excruciating pain". (SOF at ¶ 46) (emphasis added). While the Plaintiff states that he had chronic pain, it is worth noting that twice, he refused to take the very pain medication that his providers prescribed him in response to his subjective complaints of pain. (SOF at ¶ 28). Finally, to the degree that the Plaintiff may have experienced mild pain, he agreed that his cast, rather than his fracture, was causing most of his pain because his pain subsided once the cast was finally removed in November 2013. (SOF at 61).

To the degree that the Plaintiff claims that his non-displaced pinky toe fracture constitutes a serious medical condition – it does not. The only medical opinion offered in this case by a doctor is that the Plaintiff's injury did not constitute a serious injury. (SOF at ¶ 70). His pain never reached the "excruciating" level that the Seventh Circuit requires and even if it did, there was no objective indicia supporting his subjective complaints of pain. Accordingly, the Plaintiff's claim fails.

### 3. *Dr. Obaisi Lacked Subjective Notice of an Excessive Risk to the Inmate's Health*

Dr. Obaisi lacked subjective notice of an excessive risk of harm to the Plaintiff. The second element of a deliberate indifference claim – subjective notice – requires that "[A] plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016).

As discussed, *supra*, Dr. Obaisi treated this Plaintiff only four times during the relevant time period. Dr. Obaisi first treated the Plaintiff on July 17, 2013, four days after his accident. (SOF at ¶ 39). Dr. Obaisi reviewed an x-ray report which showed a fracture of the Plaintiff's pinky toe in "good position" meaning that there was no displacement of the bone and the bone did not require medical intervention such as a reduction of fixation in order to heal properly. (SOF at ¶ 41). **Because the bone was in good alignment, Dr. Obaisi prescribed pain medication, medical permits, upgraded the Plaintiff's existing crutches, and ordered the nurse to immobilize the fracture with a fiberglass cast.** (SOF at ¶ 39). There was no indication of any problems requiring any further treatment beyond applying the cast.

Dr. Obaisi next saw the Plaintiff on September 9, 2013 for the Plaintiff's complaints of ear pain. (SOF at ¶ 53). The subjective portion of Dr. Obaisi's medical note contains no complaint by the Plaintiff of any toe or foot problems. (SOF at ¶ 53). Under oath, the Plaintiff

9

testified that he would always tell a medical provider of any serious medical problem that he was experiencing. (SOF at ¶ 25). The only time that he would not mention any complaint during a medical examination is if the Plaintiff felt that the problem was not serious. (SOF at ¶ 25). Dr. Obaisi testified that he would always write down all of a patient's subjective medical complaints, including pain, numbness, or tingling. (SOF at ¶ 26). If the medical note does not contain such notations, then it means that the patient did not provide Dr. Obaisi with those complaints. (SOF at ¶ 26). Thus, on September 9, 2013, the Plaintiff made no complaints, of any kind, regarding his toe fracture to Dr. Obaisi, or any other serious medical condition.

Dr. Obaisi next saw the Plaintiff on October 31, 2013, and noted that the cast was in place, and so he ordered an x-ray to check on how the fracture was healing, and set a follow-up appointment in five days. (SOF at ¶ 59). Five days later, on November 4th, Dr. Obaisi examined the Plaintiff's x-ray, found that callus (a sign of bone growth) was visible, prescribed Vitamin D to help strengthen Plaintiff's bones and allowed the Plaintiff to do limited weight-bearing. (SOF at ¶ 59). The Plaintiff's cast was removed on November 23, 2013. (SOF at ¶ 61).

Simply, there was nothing available to Dr. Obaisi during any of his four examinations of the Plaintiff that indicated that any substantial risk of harm to the Plaintiff existed. The Plaintiff had a well-aligned fracture of his pinky toe and did not even complain about his toe injury during one of the four examinations. Because Dr. Obaisi lacked subjective notice of a substantial risk of harm, the Plaintiff cannot prove that Dr. Obaisi ever disregarded any such risk. Accordingly, the Plaintiff's deliberate indifference claim fails.

> 4. *Dr. Obaisi did not display the required culpability because his actions in treating the Plaintiff complied with the applicable standard of care*

The Plaintiff's deliberate indifference claim against Dr. Obaisi also fails because the undisputed facts show that Dr. Obaisi complied with all applicable community standards of

10

medical care in treating the Plaintiff. The third element of a deliberate indifference claim is that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle,* 429 U.S. at 107. In order to infer the required culpability for the serious claim of deliberate indifference based on a medical professional's care, the medical professional's decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). An inmate is not entitled to demand specific care, nor the best care possible, but rather, he is entitled to reasonable measures to meet a substantial risk of serious harm to him. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

A medical professional is "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under these circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). Mere disagreement with a doctor's medical judgment does not amount to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Questions of whether certain diagnostic techniques or forms of treatment are warranted are a "classic example of a matter for medical judgment". *Estate of Cole ex rel. Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996).

Courts have painstakingly articulated what deliberate indifference *is not*. "[D]eliberate indifference is not medical malpractice" and "mere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference." *Duckworth,* 532 at F.3d at 679; *Estate of Cole* 94 F. 3d at 261. The Eighth Amendment does not entitle an inmate to demand specific care or the best care possible. *Forbes*, 112 F. 3d at 267. A prison official is "free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

With respect to the culpable state of mind requirement, gross negligence is not enough; the conduct must be reckless in the criminal sense. *Lee. v. Young*, 533 F.3d 505, 509 (7th Cir. 2009). As the Seventh Circuit recently noted in an *en banc* decision, "Even objective recklessness - failing to act in the face of an unjustifiably high risk that is so obvious that it should be known - is insufficient to make out a claim." *Petties,* 836 F.3d at 728.

Here, the Plaintiff lacks sufficient evidence to establish even a medical malpractice claim against Dr. Obaisi, let alone a claim of constitutional deliberate indifference. The only medical testimony secured in this case, establishes that the standard of care for treating a non-displaced fifth metatarsal fracture like the Plaintiff had involves stabilizing the fracture, leaving it as-is, and the bone will heal properly on its own. (SOF at ¶ 30). The fracture does not require reduction in order to heal properly. (SOF at ¶ 30). As noted, *supra*, Dr. Obaisi ordered the exact treatment that the standard of care recommended. (SOF at ¶ 39). His foot was placed inside of a fiberglass cast, where it remained until November 2013 when x-rays found positive signs that the bone healed. (SOF at ¶ 60). There was no deviation, of any kind, from the care required for this Plaintiff.

To the degree that the Plaintiff, improperly, seeks to hold Dr. Obaisi liable for the treatment decisions made by the other medical professionals who also worked at Stateville, fact discovery has closed, and the Plaintiff has secured no opinions by a medical professional, criticizing that care and treatment. Accordingly, the Plaintiff's deliberate indifference claim fails against Dr. Obaisi.

   5.  *The Plaintiff has not established a pattern of neglect against Dr. Obaisi*

The Plaintiff has failed to carry his burden of identifying a pattern of neglect by Dr. Obaisi in order to support his claim for constitutional deliberate indifference. The Seventh

12

Circuit requires that when assessing whether the Plaintiff has satisfied the extremely high burden of proving deliberate indifference, the totality of an inmate's medical care must be considered. *See Dunigan v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999).  A Plaintiff's "factual highlights" are not sufficient to deny summary judgment in the defense's favor.  *Id.*  A pattern of neglect must be evident in the record.  *Id.*; *see also e.g. Gutierrez,* 111 F.3d at 1374-75 (holding that isolated incidents of neglect during an otherwise continuous stretch of adequate medical care is insufficient to support an inference of deliberate indifference).

 Rather than evidencing a pattern of neglect, as the Plaintiff must show in order to survive this Motion, the Record establishes an abundance of care received by the Plaintiff.  Between the date of his accident in July 2013 and his cast's removal in November 2013, the Plaintiff was seen by providers at Stateville seventeen (17) times related to his fracture.  (SOF at ¶¶ 31-60).  That treatment involved fiberglass casts, multiple types of pain medication, medical permits, crutches, multiple x-rays, and even off-site emergency medical treatment when Dr. Davis was concerned that the Plaintiff had a vascular compromise around his fracture – which the emergency room doctors ultimately determined to be a false alarm.  (SOF at ¶¶ 31-60).  Dr. Obaisi has also treated the Plaintiff for other medical conditions of which he makes no complaints, including outside referral to a specialist to cure a septal deviation, eye treatment, and ear treatment.  (SOF at ¶¶ 63-65).

 In reviewing the entirety of the Plaintiff's medical treatment, it is clear that the Plaintiff has received extensive treatment such that no reasonable fact finder could hear the evidence and determine that Dr. Obaisi's medical care of the Plaintiff constituted deliberate indifference.  Thus, Plaintiff's claim fails.

> 6. *No expert or verifying medical testimony established a causal connection between Dr. Obaisi's alleged deliberate indifference and Plaintiff's alleged damages*

The Plaintiff produced no medical testimony establishing his claims that Dr. Obaisi's, alleged, inadequate or delayed medical treatment detrimentally caused him harm. Without medical evidence of inadequate treatment, a prisoner's self-serving opinion of the quality of his medical treatment is insufficient to raise a genuine issue of material fact. *Walker v. Zunker*, 30 Fed. App'x. 625, 628 (7th Cir. 2002); *see also Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (finding that a plaintiff must have such "verifying medical evidence" when the deliberate indifference claim is based on the alleged failure to treat a condition adequately); *Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996) ("an inmate who complains that a delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed").

Even assuming, *arguendo*, that the Plaintiff's pinky toe somehow worsened, or could have healed more quickly had different treatment been undertaken, Plaintiff, clearly, must first offer verifying medical evidence into the record. *See Lambert v. Adler*, 587 Fed.App'x. 976, 978 (7th Cir. 2014). Fact discovery has closed and the Plaintiff has no such evidence. Accordingly, the Plaintiff cannot prove that any alleged ineffective treatment or delayed treatment proximately caused his damages. Therefore, this Court should grant summary judgment in favor of Dr. Obaisi.

**E.     The Plaintiff's claim for punitive damages fails**

The Plaintiff claims punitive damages as a result of Dr. Obaisi's alleged deliberate indifference; however, he has not proven any set of facts that would allow him to recover punitive damages. Punitive damages may be awarded under 42 U.S.C. § 1983 "when the

defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Schaub v. VonWald*, 638 F.3d 905, 922-23 (8th Cir. 2011).

Even if a question of fact exists on the Plaintiff's deliberate indifference claim against Dr. Obaisi, his actions certainly cannot be said to warrant punitive damages. Dr. Obaisi testified that he never intended to cause the Plaintiff any harm, that he only desired the best possible medical outcome for the Plaintiff, and that he complied with the community standard of medical care in treating the Plaintiff. (SOF at ¶¶ 66-68). Dr. Obaisi's conduct was not motivated any evil motive or intent. Therefore, even if this Court finds that there is a question of fact as to the Plaintiff's deliberate indifference claim, it should still find that the Plaintiff will be unable to recover punitive damages, and grant Summary Judgment to Dr. Obaisi on this issue.

## CONCLUSION

The Plaintiff's deliberate indifference claim against Dr. Obaisi fails. First, the Plaintiff seeks to hold Dr. Obaisi liable for medical treatment decisions in which he did not personally participate. Second, the Plaintiff did not suffer from a serious injury because he had only a minor fracture to his pinky toe that did not even bruise. Third, Dr. Obaisi lacked subjective notice of any excessive risk of harm to the Plaintiff. Fourth, Dr. Obaisi did not display the required culpability because his treatment complied with the standard of care in treating a non-displaced fracture of a pinky toe. Fifth, fact discovery has closed and the Plaintiff has offered no medical evidence, besides his own self-serving lay opinion, criticizing Dr. Obaisi, or any provider's treatment. Therefore, this Court should grant summary judgment in favor of Dr. Obaisi and against the Plaintiff.

WHEREFORE, Defendant, SALEH OBAISI, M.D., prays that this Honorable Court enter an Order granting Summary Judgment in his favor, dismissing the case with prejudice against Plaintiff, awarding fees and costs, and for any other relief deemed just.

        Respectfully submitted,

        CASSIDAY SCHADE LLP

        By: /s/ James F. Maruna
            One of the Attorneys for Defendant, SALEH OBAISI, M.D.

Matthew H. Weller / ARDC No. 6278685
James F. Maruna / ARDC No. 6313433
CASSIDAY SCHADE LLP
20 North Wacker Drive, Suite 1000
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – Fax
mweller@cassiday.com
jmaruna@cassiday.com

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2016 I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ James F. Maruna

8400364 JMARUNA;JMARUNA